IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DJI TECHNOLOGY, INC., DJI EUROPE B.V., and SZ DJI TECHNOLOGY CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> QFO LABS, INC., <br><br> Defendant. | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs DJI Technology, Inc., DJI Europe B.V., and SZ DJI Technology Co., Ltd., (collectively, "Plaintiffs" or "DJI"), by and through their undersigned counsel, demand a trial by jury on all issues so triable, file this Complaint for a declaratory judgment against QFO Labs, Inc. ("QFO"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment of non-infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2. DJI seeks a declaration that U.S. Patent Nos. 7,931,239 (the "'239 patent," attached hereto as Exhibit A) and 9,073,532 (the "'532 patent," attached hereto as Exhibit B) (collectively, "Patents-In-Suit") are not infringed by the manufacture, use, sale, offer for sale, or importation of DJI's unmanned aerial vehicle ("UAV") products, including the DJI FPV Aircraft and the DJI Motion Controller (collectively "Products-At-Issue").

3. DJI brings this action to lift the cloud of uncertainty created by the imminent threat of a lawsuit by QFO against DJI for alleged infringement of the Patents-In-Suit. Without declaratory relief, the threat of suit poses a substantial risk of injury to DJI as well as its subsidiaries, suppliers, and customers who make, use, sell, offer for sale, or import DJI's UAV products, including the Products-At-Issue. The continued existence of a threat of suit based on the Patents-In-Suit harms DJI's manufacture, marketing, sale and use of its drone products.

4. QFO has initiated five (5) prior actions in the United States District Court accusing infringement of the Patents-In-Suit by products that are manufactured by DJI's competitors and that share various similar features with the Products-At-Issue. The defendants in these actions include the manufacturer of the accused products (e.g., Parrot S.A.) and sellers of the accused products (e.g., Best Buy, Amazon).

5. DJI collaborates with MotionPilot S.A. ("MotionPilot") in developing the DJI Motion Controller. In the course of communications between QFO and MotionPilot, QFO sent MotionPilot a form license agreement involving the Patents-In-Suit, thereby manifesting QFO's belief that MotionPilot's controller technology infringes the Patents-In-Suit. DJI plans to release the Products-At-Issue on March 2, 2021. The Products-At-Issue will be distributed through a number of retailers, such as Best Buy and Amazon. Given QFO's prior acts suing DJI's competitor (e.g., Parrot) and customers (e.g., Best Buy, Amazon), QFO's suggestion of a license to DJI's business partner MotionPilot, and DJI's eminent marketing and sale of the Products-At-Issue in the United States, a real, immediate, and substantial dispute exists between the parties concerning the Patents-In-Suit for which DJI now seeks declaratory relief.

## THE PARTIES

6. Plaintiff DJI Technology Inc. ("DJI US") is a California corporation with its principal place of business at 201 S. Victory Blvd, Burbank, California 91502. DJI US is

involved in the marketing of DJI branded products in the United States, including DJI's UAV products.

7. Plaintiff DJI Europe B.V. ("DJI BV") is a European corporation with its principal place of business at Bijdorp-Oost 6, 2992 LA Barendrecht, Netherlands. DJI BV sells DJI branded products in the United States, including DJI's UAV products.

8. Plaintiff SZ DJI Technology Co., Ltd. ("DJI SZ") is a Chinese corporation with its principal place of business at 14th Floor, West Wing, Skyworth Semiconductor Design Building, No. 18 Gaoxin South 4th Ave, Nanshan District, Shenzhen, China. DJI SZ is responsible for the research and development of DJI-branded products sold in the United States, including DJI's UAV products.

9. On information and belief, Defendant QFO Labs, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 10149 Johnson Avenue South, Bloomington, Minnesota 55437.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over DJI's request for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., which are within the subject matter jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1338(a).

11. QFO is subject to general personal jurisdiction in this judicial district based upon its purposeful, systematic, and continuous contacts with Delaware, including its formation under the laws of Delaware, and maintaining a registered agent in this judicial district.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b) because QFO resides in the judicial district and because QFO is subject to personal jurisdiction within this judicial district.

## FACTUAL BACKGROUND

A. **DJI's UAV Products**

13. DJI is an innovator at the forefront of civilian UAV technology. DJI develops and manufactures drone systems for commercial and recreational use. DJI's commercial UAVs are versatile; they are used each and every day for things such as aerial photography and cinematography, scientific research, geological surveying, and much more. DJI has expended substantial revenues researching, developing, launching, and commercializing its drone products. DJI's operations are global, currently spanning North America, Europe, and Asia. DJI is one of the major players in the U.S. consumer UAV market. In 2019, the Federal Aviation Administration reported that DJI's UAV products constituted more than 75% of the Part 107 unmanned aircrafts[1] registered in the United States. 84 Fed. Reg. 72,490 (December 31, 2019). Parrot held about 2.5% of the same market. *Id*.

14. DJI has designed a new generation of UAV products, including the Products-At-Issue, which will be released on March 2, 2021. DJI has expended a significant amount of resources to develop the Products-At-Issue and to prepare for their release in the United States. The Products-At-Issue were designed, developed, and tested by a team of about one hundred engineers over a period of one and a half years. Multiple assembly lines have been established with the capacity to manufacture thousands of units of the Products-At-Issue per day. DJI has engaged a third-party company to secure FCC certification in order to make the Products-At-

---

[1] Part 107 "applies to the registration, airman certification, and operation of civil small unmanned aircraft systems within the United States." 14 C.F.R. § 107.1. "Small unmanned aircraft means an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft." 14 C.F.R. § 107.3.

Issue available in the United States. DJI's marketing efforts include preparing marketing videos, preparing instruction videos and user manuals, providing samples to reviewers of drone products, and preparing for press conferences and marketing events.

### B. The Patents-In-Suit

15. On information and belief, QFO holds title (by assignment) to the '239 patent, entitled "Homeostatic Flying Hovercraft," issued on April 26, 2011.

16. The '239 patent is directed generally to homeostatic flying hovercraft and to a radio controlled flying saucer toy employing the principles of a homeostatic flying hovercraft. (*See* Exhibit A).

17. Claim 10 of the '239 patent was invalidated by the Patent Trial and Appeal Board ("PTAB") in *inter partes* review proceeding IPR2016-01550.

18. On information and belief, QFO holds title (by assignment) to the '532 patent, entitled "Homeostatic Flying Hovercraft," issued on July 7, 2015. The '532 patent is a continuation of the '239 patent.

19. Like the '239 patent, the '532 patent is directed generally to homeostatic flying hovercraft and to a radio controlled flying saucer toy employing the principals of a homeostatic flying hovercraft. (*See* Exhibit B).

20. Claims 8-14 of the '532 patent were invalidated by the PTAB in *inter partes* review proceeding IPR2016-01559.

### C. QFO's History of Enforcing the Patents-In-Suit

21. On information and belief, QFO first approached Parrot regarding licensing of the Patents-In-Suit in August 2014. Discussions between QFO and Parrot continued from 2014 to 2016.

22. On August 8, 2016, Parrot filed a declaratory judgment action against QFO in this Court captioned *Parrot S.A. et al v. QFO Labs, Inc.,* C.A. No. 16-682-MN. That case is currently pending before the Court.

23. On October 12, 2016, QFO filed a lawsuit asserting infringement of the Patents-In-Suit against Parrot in the United States District Court of the District of Minnesota. The Minnesota case has been dismissed in favor of the Delaware case between the parties according to the first-to-file rule.

24. On information and belief, in November 2017, QFO initiated three actions respectively against Best Buy Co., Inc., Target Corporation, and Amazon.com, Inc. in the District of Minnesota alleging that their selling of Parrot's products infringed the Patents-In-Suit. Those cases are active and pending.

25. On April 7, 2017, QFO sued Brookstone Stores, Inc. alleging infringement of the Patents-In-Suit for making and selling its Flight Force Expedition Drone. The case has been voluntarily dismissed.

26. The Complaints filed in the previous lawsuits initiated by QFO are attached hereto as Exhibits C-G ("the Prior Complaints"). A listing of these actions follows:

- *QFO Labs, Inc. v. Parrot S.A. et al,* 0:16-cv-03443 (D. Minn.) ("Parrot Action");
- *QFO Labs, Inc. v. Best Buy Co., Inc.,* 0:17-cv-05011 (D. Minn.);
- *QFO Labs, Inc. v. Target Corporation,* 0:17-cv-05012 (D. Minn.);
- *QFO Labs, Inc. v. Amazon.com, Inc.,* 0:17-cv-05014 (D. Minn.); and
- *QFO Labs, Inc. v. Brookstone Stores, Inc.,* 0:17-cv-01100 (D. Minn.).

27. On information and belief, there were communications between MotionPilot and QFO.

28. The communications between MotionPilot and QFO related to or referred to MotionPilot's controller technology.

29. The communications between MotionPilot and QFO related to or referred to one or more of the Patents-in-Suit.

30. The communications between MotionPilot and QFO included QFO providing or transmitting a form license agreement covering at least one of the Patents-In-Suit.

    **D.    QFO's Infringement Allegations**

31. In the patent infringement action against Parrot, Best Buy, Amazon, and Target, QFO identified the Parrot AR.Drone 2.0 as a representative product that allegedly infringes the Patents-In-Suit. (*See, e.g.*, Exhibits H, I (Infringement Claim Charts (Ex. C, D) attached to the Complaint in the Parrot Action)).

32. DJI believes that QFO will make similar infringement claims against the Products-At-Issue because the Products-At-Issue have features similar to the Parrot AR.Drone 2.0 and QFO will contend that Products-At-Issue compete with Parrot's and QFO's products.

33. As shown below, the Products-At-Issue are similar to Parrot's AR.Drone 2.0 and QFO's Quad Fighter with Mimix Controller (https://www.qfolabs.com/product/quad-fighter-mimix-controller/):



34. On information and belief, the Products-At-Issue have features similar to those found in Parrot's AR.Drone 2.0 that QFO alleges infringe the Patents-In-Suit.

35. For example, both the DJI FPV Aircraft and the Parrot AR.Drone 2.0 are equipped with four motor-driven propellers, sensors such as accelerometers and gyroscopes, and batteries.

36. Both aircrafts are configured to maintain stabilization in air and to communicate with controllers using radio-frequency signals.

37. In addition, QFO alleges that Parrot's AR.Drone 2.0 infringes the "controller" limitations of the Patents-In-Suit at least in part because the direction of the aircraft can be controlled by "tilting the [controller] device."

38. Similarly, the DJI FPV Aircraft can be controlled by the movement of a user's hand holding the DJI Motion Controller.

39. This feature is a difference between the DJI Motion Controller and previous generations of DJI controllers, which allow users to control aircrafts by moving control sticks on the controllers.

## CLAIMS FOR RELIEF

### COUNT I: DECLARATORY JUDGMENT OF
### NON-INFRINGEMENT OF THE '239 PATENT

40. DJI incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

41. An actual and substantial controversy has arisen and now exists between the parties concerning whether DJI's manufacture, use, sale, offer for sale, or importation of its drone products, infringes any valid claim of the '239 patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

42. By way of example and without limiting the grounds of non-infringement that will be asserted, the Products-At-Issue do not infringe the '239 patent because DJI Motion Controller does not communicate "information . . . as said desired orientation" to the DJI FPV Aircraft, as required by the claims of the '239 patent. The DJI Motion Controller samples the Controller's position and periodically communicates the sampled position information to the DJI FPV Aircraft. The DJI FPV Aircraft processes the received sampled position information from the Controller to determine whether to change the position of Aircraft or to change the position of the Aircraft's gimbal. No information is communicated from the DJI Motion Controller to the DJI FPV Aircraft as "desired orientation."

43. DJI expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and the Court has construed the claims.

44. Plaintiffs seek a declaratory judgment that making, using, offering to sell, selling, and importing DJI's drone products, does not and will not infringe any valid claim of the '239 patent.

## COUNT II: DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '532 PATENT

45. DJI incorporates by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

46. An actual and substantial controversy has arisen and now exists between the parties concerning whether DJI's manufacture, use, sale, offer for sale, or importation of its drone products, infringes any valid claim of the '532 patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

47. By way of example and without limiting the grounds of non-infringement that will be asserted, the Products-At-Issue do not infringe the '532 patent because DJI Motion Controller does not communicate a "desired orientation" to the DJI FPV Aircraft, as required by the claims of the '532 patent. The DJI Motion Controller samples the Controller's position and periodically communicates the sampled position information to the DJI FPV Aircraft. The DJI FPV Aircraft processes the received sampled position information from the Controller to determine whether to change the position of Aircraft or to change the position of the Aircraft's gimbal. No "desired orientation" is communicated from the DJI Motion Controller to the DJI FPV Aircraft.

48. As another example and without limiting the grounds of non-infringement that will be asserted, the Products-At-Issue do not infringe the '532 patent because the "orientation" of the DJI FPV Aircraft does not "mimic[ ] a corresponding moment-to-moment positioning" or "mimic[ ] the sensed orientation" of the DJI Motion Controller. The DJI Motion Controller samples the Controller's position and periodically communicates the sampled position information to the DJI FPV Aircraft. The DJI FPV Aircraft processes the received sampled position information from the Controller to determine whether to change the position of Aircraft

or to change the position of the Aircraft's gimbal. In this process, there is no mimicking of the "moment-to-moment positioning" or "sensed orientation" of the DJI Motion Controller.

49. DJI expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and the Court has construed the claims.

50. Plaintiffs seek a declaratory judgment that making, using, offering to sell, selling, and importing DJI's drone products, does not and will not infringe any valid claim of the '532 patent.

## **PRAYER FOR RELIEF**

51. WHEREFORE, DJI respectfully requests that judgment be entered in favor of DJI and against QFO:

- Declaring that DJI does not directly or indirectly infringe the '239 patent, either literally or under the doctrine of equivalents, and that it is not liable for damages or injunctive relief based on any claim of the '239 patent;

- Declaring that DJI does not directly or indirectly infringe the '532 patent, either literally or under the doctrine of equivalents, and that it is not liable for damages or injunctive relief based on any claim of the '532 patent;

- Enjoining QFO from enforcing the Patents-In-Suit against DJI, its distributors, or customers;

- Finding that the case is exceptional under 35 U.S.C. § 285;

- Awarding DJI its costs, expenses, and attorneys' fees;

- Awarding DJI prejudgment and post-judgment interest; and

- Such other and further relief as the Court may deem just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, DJI demands a jury trial on all issues and claims so triable.

Dated: February 24, 2021

Respectfully submitted,

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiffs*

– and –

Harper Batts
Chris Ponder
SHEPPARD MULLIN RICHTER & HAMPTON
379 Lytton Avenue
Palo Alto, CA  94301
(650) 815-2673

*Attorneys for Plaintiffs DJI TECHNOLOGY, INC., DJI EUROPE B.V., and SZ DJI TECHNOLOGY CO., LTD.*